JOHN ARSI, SR., PETITIONER-RESPONDENT, v. OCEAN COUNTY ROAD DEPARTMENT, RESPONDENT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 11, 1985—Decided October 29, 1985.

Before Judges KING, O'BRIEN and SIMPSON.

*Joseph Scalia* argued the cause for appellant (*Berry, Kagan, Privetera & Sahradnik,* attorneys; *Roberta Torre Quinn,* on the brief).

*William G. Freeman* argued the cause for respondent (*Kelly, Butensky & Kurzrok,* attorneys).

The opinion of the court was delivered by

KING, P.J.A.D.

On this appeal from a judgment in favor of petitioner for total and permanent cardiovascular disability the respondent employer urges that petitioner did not meet his burden of proof under *N.J.S.A.* 34:15–7.2; *L.* 1979, *c.* 283, § 3.[1] The respondent employer, Ocean County, claims that petitioner did not prove that a "work effort or strain involving a substantial condition, event or happening in excess of the wear and tear of the claimant's daily living ... caused in a material degree the cardiovascular ... injury ... resulting therefrom." We have recently reviewed the history and ostensible purpose of this amendment, a part of the so-called "reform act," effective in 1980. *See Perno v. Ornstein Fashions, Inc.,* 196 *N.J.Super.* 174 (App.Div.1984).

"To generalize, the legislation increased monetary awards for serious injuries but made recovery for lesser injuries more difficult." *Id.* at 176. Thus, a petitioner is now required to prove that the cardiovascular injury involved substantial effort in excess of the rigors of daily living which effort was job-relat-

---

[1] *N.J.S.A.* 34:15–7.2 states:

In any claim for compensation for injury or death from cardiovascular or cerebral vascular causes, the claimant shall prove by a preponderance of the credible evidence that the injury or death was produced by the work effort or strain involving a substantial condition, event or happening in excess of the wear and tear of the claimant's daily living and in reasonable medical probability caused in a material degree the cardiovascular or cerebral vascular injury or death resulting therefrom.

Material degree means an appreciable degree or a degree substantially greater than de minimis.

ed in a material or appreciable degree. We are satisfied that under our scope of review the evidence in this case reasonably supports the judge of compensation's award of total and permanent disability to petitioner. *See Close v. Kordulak,* 44 *N.J.* 589 (1965).

The case was sharply contested, both on the factual events and on the medical interpretation to be drawn from them. Petitioner contended that on the morning of February 10, 1982 he suffered a cardiac episode while doing heavy shovelling work on the second half of a double shift which triggered three-vessel coronary by-pass surgery. Respondent asserted that the episode, if indeed it did occur as described by petitioner, involved only a transitory episode of angina pectoris, of little or no consequence to his underlying progressive arteriosclerotic cardiovascular disease.

■ These are the basic facts. Petitioner, age 62, had worked for Ocean County as a laborer and then as an equipment operator since 1970. His job mostly involved driving a truck, a front-end loader or a mower. On February 9, 1982 he worked his usual 8 a.m. to 4:30 p.m. shift as an equipment operator. He went home, ate dinner, and went to bed at 11 p.m. At about 2 a.m. he received a call to report to work to sand icy roads. He worked from about 2:30 a.m. to 8 a.m. sanding roads. He then resumed his regular shift work at 8 a.m. on February 10. On this particular day this work required him to shovel "coal patch" from the back of a truck to fix potholes. The weather was "pretty cold" and petitioner was tired. The patch and shovel weighed about 16 pounds; the patch was harder to shovel in cold weather. He described the event this way. "I got out, I was right behind the truck, I was cleaning the hole. I was pushing to get the patch out at the truck from behind and had to put pressure. All of a sudden everything went numb. My arms went numb, the pain in my

chest and everything, and I went down." A fellow workman helped petitioner into the truck. He was driven to his foreman, reported the incident and went home. He never returned to work again.

The key to petitioner's case was the testimony of Dr. Melvin C. White, a board-certified cardiologist attending at the Deborah Heart and Lung Center where petitioner went for his triple by-pass surgery. Upon recital of the hypothetical question [2] Dr. White was asked if "the described work-effort considering he was doing his regular assigned duties but what I have described to you, alone is that of a substantial event or events in excess of the wear and tear of the petitioner's daily living and in reasonable medical probability, caused in a material and we may say exacerbated or aggravated in a material degree, the cardiac injury which required the treatment he received, including the bypass?" Dr. White answered: "My opinion is that the extended work efforts did exacerbate his cardiac condition" to a "material degree." He then explained his reasons. He said that "with blockages in the coronary arteries as Mr. Arsi suffered from there is a supply and demand relationship between the demands on the heart muscle and the amount of blood that can be supplied to the heart muscle through these blocked arteries." He said that

When the demand on the heart is excessive and it being not supplied through these blocked arteries, then you develop angiopectoralis, pain in the chest.

---

[2] The respondent employer points out the error in the hypothetical question framed for petitioner's medical experts. The hypothetical question suggests that petitioner had been shoveling coal patch since 2 a.m. This was not so. He had been on the coal patch detail only about an hour or so. We must note that the hypothetical question framed for respondent's medical expert was also invalid to the facts. That hypothetical had petitioner "digging potholes" and experiencing pain which "did not radiate and did not cause associated symptoms." We do not think these deviations from the recorded events require a new trial. Our review of the record discloses that the judge understood the testimony and analyzed it accurately in light of the probable realities, notwithstanding the hyperbole of counsel.

There were two significant stresses on Mr. Arsi that produced this excessive demand.

First, was the effort involved in doing heavy lifting and carrying, mainly the shovelling. This will raise your blood pressure. It increases the vessels inside the heart creating excess demand for oxygen and nutrients.

The second demand was caused by the cold weather. In cold weather the blood vessels on the skin constrict down very tightly. This is to prevent excess heat loss. This, in addition, races the blood pressure severely, also creating excess demands on the heart muscle between these two components, the increased demand was too much for his circulation and it brought on his chest pain.

When asked about fatigue he said "certainly an extraordinary amount of work during the day creates that much more of a demand on the heart muscle." The key factors in the causation analysis, according to Dr. White, were the heavy work (more strenuous than petitioner's usual work as an equipment operator), the cold weather, and the fatigue induced by the double shift. Dr. White concluded that petitioner was "totally and permanently disabled" at the time of trial in February 1984.

On cross-examination, Dr. White, of course, acknowledged the existence of petitioner's underlying coronary arteriosclerosis. But he concluded that "the activities that day certainly exacerbated the effects" of the underlying disease process— "had he not been performing that extraordinary work, he would not have suffered those angina pains." The doctor said "looking at the overall scope of the patient, his cardiac condition, his global features of his disease were worse when he performed that activity physiologically or at the cellular level" and that there "was no question in my mind that his symptoms were provoked by the amount of work that he performed."

Dr. Roland Goodman, a specialist in internal medicine, also supported petitioner's contention that his total and permanent disability was triggered by the work-related episode of February 10, 1982. He said

Now in my opinion when the patient engaged in the work activity on February 10, 1982, working in cold weather, and having to use a shovel to remove cold patch from a dump truck, after he had worked the previous day

and had barely one hour's rest or sleep, when he had to do this job loosening up his cold patch which was hard because of the cold weather and shovelling this cold patch from the partially raised dump truck, when he did this work activity for about six and a half hours, there were physiological changes going on within his heart, in my opinion, and also I should say in his body. Because of the cold weather, the body compensates by constriction of the vessels in the skin, this is how we keep ourselves warm in the wintertime. This puts the blood vessels in the skin and muscles—makes them narrower. The heart has to work harder to pump blood through these constrictive peripheral vessels.

As a result, the heart which already in this case has a narrowed coronary vessels resulting in a discrepancy between the workload placed upon the heart. We call that the work demand, and the ability of this heart previously damaged by the prior heart attack to pump the blood through the heart and through the vessels. As a result this patient developed chest pains, he collapsed, in fact, and he was ultimately found to have three-vessel coronary artery disease for which he required coronary artery bypass, surgery.

Apparently as a postoperative sequela of that surgery he developed evidence of an inferior wall myocardial infarction which, of course, was present although not in the same location, it was present when I did my electrocardiogram.

Now as a result of the injury to the heart, the surgery, the new infarction, there was damage to his heart muscle itself. So much so that it became weaker, the heart muscle could not pump blood adequately through the circulation, fluid accumulated in the lungs; and I heard that when I listened to him with my stethoscope. I heard the moist basal rales especially on the right side of his lungs.

Furthermore, there was a disorganization of the anatomy of the heart so there was a murmur present. There was narrowing or at least physiologic narrowing of the aortic valve as a result of all of this; and this weakens heart muscle. The heart becoming enlarged and I saw this on the fluoroscope. I already told you about the electrocardiographic findings.

He was taking medication strictly for the treatment of his angina which had not apparently been resolved as a result of the heart surgery. He was taking Nitrobid, Persantine and Isordil. He was unable to perform any work activities. He tires easily. He has chest pain and shortness of breath. He told me about this and it also in the hypothetical question.

And, therefore, from these facts I conclude that the work, strain and effort that he did on February 10, 1982 was physiologically sufficient and instrumental in contributing to his present cardiac status.

In respect of the underlying condition, Dr. Goodman observed that "here we're dealing with a man who prior to that date was functioning, doing obviously heavy work as an operator of this sweeper machine, who was able to up until that time do this

type of work actively until he had to, until he had this exposure on this cold day doing this heavy physical work." He concluded that the events of February 10, 1982 "transferred what we would call an asymptomatic person" to "one who had severe angina" and went on to heart surgery.

The defendant presented the testimony of a board-eligible cardiologist and internist, Dr. David Scott. He felt that the attack of February 10, 1982 had no relationship to petitioner's present condition and was simply a transitory episode of angina. The defense fully explored by other evidence, including medical records, the petitioner's medical history and the nature of his underlying disease process. As we have indicated, the issues were sharply and expertly disputed. Their resolution was, of course, for the judge of compensation to decide, mindful as we are of the deferential scope of review imposed upon us in these cases by *Close v. Kordulak*, 44 *N.J.* at 599, and "with due regard also to the agency's expertise where such expertise is a pertinent factor." *Ibid.*

The judge made these observations before concluding that petitioner had established a total and permanent disability case

After having heard the testimony of Mr. Arsi and also that of his co-workers, Mr. Scott and Mr. Mitchell, there is no question in my mind that his regular work day with the Ocean County Road Department was 8 a.m. to 4:30 p.m. On Tuesday, February 9, 1982, he had worked that regular day. After going home and going to bed at 11 p.m., he received a telephone call about 2 a.m. from Mr. Scott telling him to come to work to do an emergency duty because of either an ice storm or snowstorm which had occurred during the night requiring the County Road Department to go out and sand down the roads.

After working approximately five or six hours, while fatigued from three hours sleep and exerting himself in cold weather by doing shovelling, which he did not normally do, he suffered a sudden severe episode of chest pains, sweating, shortness of breath and nausea. I am quite satisfied that the foregoing strain, which preceded this event exceeded the normal wear and tear of his daily life.

It is true that prior to February 10, Petitioner had suffered some mild angina-like pain. In 1974, he was hospitalized for a few days for a suspected heart attack, but objective tests performed at that time were negative and he

had no reoccurrence of the problem for the eight years following. There is no evidence that he lost work because of any cardiac problem prior to February 10, 1982, nor was there any evidence that his doctor had placed any restrictions on him because of a cardiac problem before February 10, 1982.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

The concurrence in point of time between the unusually strenuous work effort and the sudden severe cardiac symptoms that the Petitioner began to experience, leads me to accept Dr. Goodman's opinion that the sudden demand on his heart caused his coronary arteries to suddenly and permanently narrow in the same way that the banks of a river might narrow as the result of a sudden deposition of silt and mud that might be caused by an upstream storm or flood.

I am persuaded by both the testimony of Dr. Issacson [he probably meant Dr. White] and Dr. Goodman that Petitioner had some arteriosclerosis and possible mild angina which was suddenly and irreversibly exacerbated by his work effort. Thereafter, as a result of his work effort, he developed what Dr. Goodman described as unstable angina, which threatened his life and required cardiac bypass surgery. I am satisfied that but for the work effort, Mr. Arsi would not have developed this condition at this time.

These conclusions were well-grounded in the evidence. Since we are so satisfied, it is our duty to affirm.

■ We are also satisfied that the statutory requirements, *i.e.,* that the injury was produced by a "work effort or strain involving a substantial condition, event or happening in excess of the wear and tear of the claimant's daily living," are met in this case. Petitioner had worked a double shift in cold weather and was short of sleep; when he had the attack, he was doing physical shovelling work, a task in excess of his usual job as a truck driver and equipment operator. We need not tarry here to discuss the possible outer limits of this "wear and tear" requirement which is fresh to our workers' compensation jurisprudence since the reform act effective in 1980. The requirement was clearly satisfied in this case. *See Larson, Workers' Compensation Law,* § 38.64(a)(8), (9) and (10) (1985); *see also McClain v. Woodbury Bd. of Education,* 30 *N.J.* 567, 573 (1959).

Affirmed.